UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT: WESTERN DISTRICT OF NEW YORK
_____

MICHAEL URBAN and JAMI KRAFCHAK,

                                                     Index No.

                  Plaintiff,

    -vs-

                                               **COMPLAINT**

CITY OF BUFFALO,
COMMISSIONER OF THE CITY OF BUFFALO
POLICE DEPARTMENT  DANIEL DERENDA,
CITY OF BUFFALO POLICE DETECTIVE  CHARLES  MILITELLO,
CITY OF BUFFALO SWAT COMMANDER
VERNON BEATY, CITY OF BUFFALO
POLICE DETECTIVE  LEO MCGRATH, CITY
OF BUFFALO POLICE DETECTIVE  ANTHONY
LAPIANA, CITY OF BUFFALO POLICE DETECTIVE
SHAWN ADAMS, CITY OF BUFFALO POLICE
DETECTIVE  DEBORAH MULHERN, CITY OF BUFFALO
POLICE DETECTIVE  ELLEN NOWADLY, CITY OF
BUFFALO POLICE OFFICER DAVID LITTERE,  and CITY OF BUFFALO POLICE
OFFICER JOHN DOE.

                  Defendants.

_____

**JURY DEMAND**

Trial by Jury on all issues is demanded

**PRELIMINARY INTRODUCTION**

1.      This is an action brought pursuant to 42 U.S.C § 1983 and 42 U.S.C § 1988 as

applicable to the Fourth and Fourteenth Amendments of the United States Constitution. The

claim arises from a July 29, 2016 incident in which Buffalo Police Detectives and Officers, acting under the color of State Law, intentionally and willfully subjected Plaintiffs to, among other things, property damage, the negligent, reckless, and/or intentional infliction of emotional distress, the unlawful deprivation of the right to ones' liberty and property, as well as the right to privacy. Additionally, the Plaintiffs were detained and held against their will during the unlawful seizure arising from the use of excessive use of force by the Defendant Detective Militello, which resulted in the unjustifiable and unnecessary killing of Plaintiff Urban's one-and-a-half-year-old canine; aka a black male Staffordshire terrier named "GOTHAM." Defendant Militello's reckless and unwarranted discharge of a firearm nearly caused the demise of Plaintiff Jami Krafchak, who was almost hit with a bullet that went through the upper ceiling and landed in her vicinity as she was getting ready to go to work.

## PARTIES

2.     Plaintiff, Michael Urban, resides at 150 Woodside Avenue, Buffalo, New York, 14220, which is located in Erie County and the State of New York. At the time of the transactions and occurrences that give rise to this lawsuit, Plaintiff Urban was residing at 76 Weaver Street, Upper Apartment, Buffalo, New York 14206, which is also located within the County of Erie and the State of New York.

3.     Plaintiff, Jami Krafchak, resides at 65 Colton Street, Cheektowaga, New York, 14206, which is located in Erie County and the State of New York. At the time of the transactions and occurrences that give rise to this lawsuit, Plaintiff Krafchak was

residing at 76 Weaver Street, Lower Apartment, Buffalo, New York 14206, which is also located within the County of Erie and the State of New York.

4.      Upon information and belief, the CITY OF BUFFALO, is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York. At all times relevant hereto, the City of Buffalo Police Department was responsible for the policy, practice, supervision, implementation, and conduct of all City of Buffalo Police Department matters and was responsible for appointment, training, supervision, discipline and retention and conduct of all City of Buffalo Police Department personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing rules of the City of Buffalo Police Department, and also ensuring that the City of Buffalo Police Department personnel obey the laws of the United States and the State of New York.

5.      Upon information and belief, Defendant Daniel Derenda is the Police Commissioner of the City of Buffalo Police Department.

6.      Upon information and belief, Defendant Detective Charles Militello is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

7.      Upon information and belief, Defendant Swat Commander Vernon Beaty is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

8.     Upon information and belief, Defendant Detective Leo McGrath, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

9.     Upon information and belief, Defendant Detective Anthony Lapiana is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

10.     Upon information and belief, Defendant Detective Shawn Adams is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

11.     Upon information and belief, Defendant Detective Deborah Mulhern, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

12.     Upon information and belief, Defendant Detective Ellen Nowadly, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

13.     Upon information and belief, Defendant Officer David Littere, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

## JURISDICTION

14.     Plaintiffs brings this action to recover damages for the violation of their civil rights under the Fourth Amendment to the United States Constitution, codified at 42 U.S.C. §

1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

15.     The unreasonable killing of a companion animal constitutes an unreasonable "seizure" of personal property under the Fourth Amendment. <u>Carroll v. County of Monroe</u>, 712 F.3d 649 (2013).

16.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

17.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §2201 and § 2202.

18.     Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983.

19.     Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

20.     Supplemental Jurisdiction for the related state claims is invoked pursuant to 28 U.S. Code § 1367(a), as the attached claims form part of the same case and controversy under Article III of the United States Constitution.

21.     As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, Plaintiff's do not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim for Federal Causes of Action.

22.     However, as related to the Supplemental New York State Causes of action, on or about the 8th day of August, 2016, a Notice of Claim was served on behalf of the Plaintiffs upon the City of Buffalo and the City of Buffalo Police Department, in duplicate, which Notice of Claim sets forth the name and post office address of

Michael Urban and Jami Krafchak, the Plaintiffs, the name and post office address of Plaintiff's attorney, the general nature of the claim, the time when, the place where, and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and said Notice of Claim was served upon the above-referenced parties within ninety (90) days of the date upon which the claim arose.

23.    At all relevant times, Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly, Littere, and John Doe were discharging their duties in the scope of their employment by the City of Buffalo Police Department and the City of Buffalo.

24.    At all relevant times, Defendant Derenda was discharging his duties in the scope of his employment by the City of Buffalo Police Department and the City of Buffalo.

25.    At least thirty (30) days have elapsed since the service of the notice of claim, as aforesaid, and the above-referenced defendants have failed and neglected to adjust or pay the said claim.

## VENUE

26.    This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3) because the claims arose in this judicial district and the Defendants reside in and /or do business in Erie County.

## FACTUAL  BACKGROUND

27.     Plaintiff Urban obtained a small, wonderfully friendly, intelligent, and obedient male Staffordshire terrier puppy, aka Gotham, in January of 2015. Gotham was only five-weeks old at the time Plaintiff Urban obtained said puppy.  Plaintiff Urban had to bottle feed the animal,  due to the abuse said animal had endured by his previous owner. Plaintiff Urban owned and possessed said dog until July 29, 2016 and considered the animal his best friend.

28.     On or about July 29, 2016, at approximately 6:30AM, Defendants executed a search warrant at Plaintiff Urban's apartment, apparently signed by the Honorable Judge Thomas P. Amodeo July 25, 2016. The search warrant authorized the Buffalo Police Department and the City of Buffalo Police Department Narcotics Division, specifically Buffalo Police Detectives Shawn Adams and Tom Starkey, to execute a search warrant at 76 Weaver Street, Buffalo, New York, in the upper apartment.

29. Upon information and belief, the Officer Defendants had a warrant that was wrongfully and fraudulently obtained, given that Plaintiff Urban does not sell drugs and does not come close to matching the physical description of the target of the warrant. Said warrant is attached hereto as Exhibit A.

30. The Defendant officers, with no probable cause that a crime was being committed nor consent from any authorized party, entered onto Plaintiff Urban's premises. Said

Defendants came in through a common area side door that both units use and have access to. Plaintiff Urban then heard conversation from a hallway area just outside the upper door.

31. Plaintiff Urban was in his kitchen, making his lunch for work with his beloved companion animal Gotham sitting nearby. Attached hereto as Exhibit B are photographs of Gotham, which show his loving, playful, and docile personality. Plaintiff Urban, hearing the conversation, went to open the door. The door leads directly from the hallway to the kitchen. As soon as he opened the door, Defendant Militello faced Plaintiff and pointed the gun immediately at the dog. Plaintiff Urban begged Defendant Militello for at least two minutes not to shoot his dog. Plaintiff Urban was begging to put the dog in his crate, which was in an adjacent room. Plaintiff Urban was explaining that the dog, a 1.5-year-old black and very friendly loving pit bull dog, was harmless and asked to kennel him accordingly. In turn, the dog was wagging his tail and demonstrating a calmness devoid of any conceivable sign of aggression.

32. Ultimately, while in the hallway, Defendant Militello shot the dog in the middle of his face. The dog, gravely injured, then hid behind his owner, still wagging his tail, at which point the Officer shot the dog again. The multiple shots are in direct conflict to Defendant Militello's statement on his firearm discharge summary, where it states that Defendant Militello fired one shot from his Glock 45 caliber. Said report is attached hereto as Exhibit C.

33. A Defendant Officer, identity unknown, asked who else was in the premises. Plaintiff Urban's friend, Rayshawn Reed was in the living room, yelling "Don't shoot, Don't

shoot!" Ultimately, the Defendant Officer's arrested Mr. Reed for having a digital scale and a small amount of marijuana.

34. At this point, a Defendant Officer put Plaintiff Urban in zip ties and an unknown Defendant Officer slapped Plaintiff Urban on the shoulder, saying, "This is what happens in raids." At this point, Plaintiff Urban was taken to a game room, and then laid down by the Defendant Officers. Plaintiff Urban was trying to see his dying or deceased dog, at which point a Defendant Officer John Doe kicked Plaintiff Urban in the head twice.

35. Meanwhile, while this was occurring in the Upper Apartment of 76 Weaver Street, Plaintiff Krafchak was getting ready for work in her lower apartment when Defendant Officers, with no probable cause that a crime was being committed nor consent from any authorized party, entered into Plaintiff Krafchak's premises. Upon information and belief, the Officers had a warrant wrongfully and fraudulently obtained given that Plaintiff Krafchakt does not sell drugs and is not an African American male, as the warrant specifies. Said warrant is attached hereto as Exhibit D. Plaintiff Krafchak resides in said unit with her husband, also a white male. No black males live or visit Plaintiff Krafchak's unit.

36. Plaintiff Krafchak was in her bra and pajama pants while the Defendant Officers were screaming for her to put her hands up and asking if her husband was African American. Plaintiff Krafchak repeatedly told the Defendant Officers that her husband was not African American, yet they continued to search her house unlawfully, all while

taking pictures of Plaintiff Krafchak in her bra and pajama pants, with their own personal cell phones.

37.    Plaintiff Krafchak, who has never had any encounters with the police, was repeatedly telling Defendant Officers that they had the wrong house. She was trying to explain to them that she works for Erie County Social Services; however the Defendant Officers repeatedly told her to shut up.

38.    Also, while Plaintiff Urban's residence was unlawfully being raided and his dog was being shot to death, a bullet came through the floor-board, nearly hitting Plaintiff Krafchak and potentially killing her. The bullet hole then allowed the blood from the deceased dog to seep into Plaintiff Krafchak's apartment. Plaintiff Krafchak also adored Plaintiff Urban's canine, as did many residents of the neighborhood. Such affection that Plaintiff Krafchak had for the animal in question has furthered her feelings of woe and despair related to the events of the day in question.

39.    The Buffalo Police Department, as is their habit for these occasions, then called upon Buffalo Animal Control to assert dominion and control over the deceased animal, as opposed to using the outfit to control the animal while still alive.

40.    It is believed Buffalo Police do this as a matter of habit because there is no desire to save the life of any animals in the neighborhoods they are sworn to protect and serve, but rather instead use the Animal Control Department to help cover up the unjustifiable and brutal slayings of such companion animals as Gotham by tampering with the body of the canine.

41.     Therefore, as a matter of course, in this situation and in hundreds of others through the years, the Buffalo Police Department converts a vibrant and healthy dog into a deceased and bullet ridden one. They then have Buffalo Animal Control pick up the body and transport the body to the SPCA where the body is incinerated.

42.     However, due to the fortitude and diligence of Plaintiff Urban, Gotham's body was re-claimed by Plaintiff Urban and the deceased body was then taken to the Erie County SPCA for a Forensic Necropsy. The Necropsy was performed by Dr. Helene Chevalier, and the results are attached hereto as Exhibit E. Notably, in her report, she states that due to the trajectory of the bullet and the lack of gunpowder on the dog's fur, it appears that the dog was shot from a distance and may have been looking up while he was shot. She goes on to say that the dog did not die instantly, but rather died of severe blood loss and/or airway obstruction from aspiration of blood and tissue fragments.

43.     Defendant Militello immediately escalated to deadly physical force against the dog as opposed to using a less lethal method, which is standard procedure for the Buffalo Police Department and especially its Narcotics Unit. Attached hereto as Exhibit F is the aftermath of what Plaintiff Urban was left with of his beloved dog, as he was forced to pick up the blood and brains of his best friend.

44.     Defendants, while acting under the color of state law, violated Plaintiffs' Fourth Amendment and Fourteenth Amendment right to be free against unreasonable searches and seizures. Defendants unreasonably and unjustifiably interfered with and deprived Plaintiff Urban of his property interest in his dog Gotham, when Gotham was shot needlessly while Plaintiff Urban was begging Defendant Militello to allow him to put

Gotham in his kennel. Plaintiff Urban did not give permission to kill Gotham and was devastated by the unnecessary slaying of said companion animal.

45.    Gotham was on his owner's property at the time of Defendants' unlawful intrusion, and presented no imminent threat, and certainly no imminent threat that could remotely justify lethal force after no other lesser means of force were attempted. Thereby, the force used during the seizure was unreasonable and in violation of the Plaintiff's right to be protected against unlawful searches and seizures.

46.    Plaintiff Urban was forced to move from his home at 76 Weaver Street, when his landlord received a letter from the Mayor evicting Plaintiff Urban for drug sales, and Plaintiff Krafchak was forced to move from the home, as the home served as a constant reminder of the traumatic event that she was apart of.

**First Cause of Action for violations of the Fourth Amendment per 42 U.S.C. § 1983 for the unlawful damaging and deprivation of Plaintiff Michael Urban's property rights against City of Buffalo Police Officers Detective Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly and Police Officer Littere.**

47.    Plaintiffs, Michael Urban and Jami Krafchak, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

48.    On or about July 29, 2016, Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly and Littere, and the City of Buffalo Police Department Narcotics Division, came to Plaintiffs' former residence and entered the residence without permission of the Plaintiffs. They executed a search warrant clearly designated for individuals other than Plaintiffs. Specifically, the target of the warrant

for the Upper apartment was a white male, 5'11 approximately 210 pounds. Plaintiff Urban is 6'4 and over 300 pounds. The target of the warrant for the Lower apartment was a 5'11 170 lb. African American male. Plaintiff Krafchak is a white female and no African Americans reside in said apartment.

49.     Despite the above-referenced facts, upon information and belief, Defendants executed a search warrant that was acquired through sloppy police work as the descriptions of the individuals within the warrant and those that lived at the residences were quite disparate in appearance from one another. Such execution of this warrant resulted in the trashing of Plaintiffs' property, leaving the premises unsecured, and Detective Militello brutally shooting and killing Plaintiff Urban's non-barking, not threatening, amicable tail wagging dog, aka Gotham, as the dog sat by Plaintiff Urban in a non-confrontational manner. Even after being hit and injured by the first bullet from Defendant Militello's gun, the dog still did not show aggression.

50.     Gotham, as Plaintiff Urban's best friend and companion, constitutes a special classification of property under New York State Law. Defendants seized and destroyed said companion animal in a matter that shocks the conscience, and in a criminal and unjustified matter. **Travis v. Murray**, 42 Misc.3d 447 (2013).

51.     It is undisputed that, in the Second Circuit, the unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. **Carroll v. County of Monroe**, 712 F.3d 649 (2013).

52.    As alleged above, Defendants, as is their habit for these occasions, then called upon Buffalo Animal Control to assert dominion and control over the deceased animal, as opposed to using said municipal agency to control the animal while still alive.

53.    All other named Defendants in this cause of action aside from Defendant Militello had ample time to intervene and prevent this dastardly deed and unlawful seizure from taking place, as Defendant Militello had his weapon pointed at Gotham for a lengthy period of time. Instead... they did nothing, allowing this tragedy to unfold.

54.    Said above-referenced actions, both individually and in their entirety, fully disregarded the Constitutional rights of the Plaintiffs to be free of unlawful and unreasonable seizures under the Fourth and Fourteenth Amendments of the Constitution.


**Second Cause of Action for Plaintiffs Michael Urban for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C § 1983 for municipal liability under the deprivation of one's property rights in the form of the shooting of citizens' dogs is a municipal pattern or practice against the Defendant City of Buffalo and Defendant Daniel Derenda.**

55.    Plaintiffs, Michael Urban and Jami Krafchak, repeat and reiterate each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

56.    Aside from the above-referenced set of facts, the City of Buffalo and its Police Department caused the Plaintiffs to be subjected to Fourth Amendment violations because Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly and Littere's violations were part of the customary practices of the City of Buffalo

and its' police department. Such repeated Fourth & Fourteenth Amendment violations amount to the City of Buffalo's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and regulate their Detectives and Officers' dealings with canines resulted in Defendant Militello's actions in slaying Gotham and thereby causing Plaintiff Urban insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Buffalo, the City of Buffalo Police Department, and City of Buffalo Police Department Commissioner Daniel Derenda.

57.    Furthermore, the City of Buffalo, its Police Department, and Commissioner Daniel Derenda tacitly condone the practice of lethal means used as a first resort against dogs, otherwise known as **puppycide**, a disturbing American inner city phenomenon, by only performing a superficial, biased, and artificial review of the dogs killed by its Police Department which always results in the erroneous and contrived finding that the discharge of the weapon by the Officer, which result in the killing of the dog, is justified by the officer.

58.    In this instance, the Department superficially reviewed the erroneous execution of the warrant as well as Detective Militello's killing of Gotham and made a determination that Detective Militello acted appropriately, after the Police Department and its Narcotics Division attempted to dispose of Gotham's body without any forensic or physical evidence being taken, and without recording,

considering, or documenting any statements of non-police and therefore unbiased witnesses.

59.     To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) **a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates**. Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's_actions).). Relating to widespread and pervasive practices and using logical inferences to impute knowledge onto policymakers, circumstantial evidence can be sufficient to support an inference

that . . . a municipal policy or custom exists." <u>Santos v. New York City</u>, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993)).

In this instance, the following constitutes the pattern or practice of the City of Buffalo Police Department and the City of Buffalo:

- That Defendant Militello shot and killed Gotham, the canine in question, as the dog was gently and calmly sitting next to his owner, Plaintiff Urban. The City of Buffalo Police Department has wrongfully shot numerous dogs through the years, through the deliberate indifference to the dogs' owner's Fourth Amendment rights to be free from unlawful seizures of such property. Such indifference to this particular right, and civil rights in general, is perpetuated by the City of Buffalo Police Department's policymaker, elected Commissioner of the City of Buffalo Police Department, Daniel Derenda.

- Two other examples of such killings throughout the years are the City of Buffalo Police Department's shooting and killing of a friendly and non-threatening Pit Bull type dog, Cindy, during a wrong house search warrant executed on an U.S. Army Iraqi War Veteran, Adam Arroyo, In the City of Buffalo, on or about June 3rd, 2013. Another example is the City of Buffalo Police Departments unjustifiable and wrongfully shooting of a friendly and docile nine (9) month-old-canine; aka a male Pit Bull puppy named "Rocky," on or about July 29, 2014, in the Town of West Seneca.

- In all three of the above representative examples, the Officers in question displayed pleasure as a result of their misdeeds. All of the above-referenced animals presented no threat towards anyone, and did not act aggressive in any manner whatsoever. There are hundreds of more instances of this pattern or practice taking place through the years.

- That, in both this case and numerous others through the years, the City of Buffalo Police Department unjustifiably and unreasonably kills a companion animal, and, in a backward and sinister thinking manner, the actor or fellow officers **then** contact animal control to dispose of the dead or severely wounded body, as opposed to previously contacting the agency to control the animal when said animal was alive, thereby preserving the lives of the innocent animals.

- Such practice also always results in superficial "reviews," relating to whether the discharge of the Officer's firearm and resultant kill was proper. Such shams of an investigation are done without any review of relevant evidence, just self-serving propagandist statements by police Officers.

- Such repeat Fourth Amendment violations amount to the City of Buffalo's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and

regulate their Detectives and Officers' dealings with canines resulted in Defendant Militello's actions in shooting Gotham and thereby causing the Plaintiffs insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Buffalo and the City of Buffalo's Police Department.

- Numerous animal welfare agencies, such as the Erie County SPCA, have repeatedly reached out to the City of Buffalo Police Department and offered assistance to try and help the beleaguered Department accomplish the task that seems to come so naturally to other professionals who work within the neighborhoods and encounter dogs. Mailmen, Utility Workers, and Pizza Deliverymen are just some of the individuals who seems to encounter strange dogs in the Western New York Area on a routine basis... and don't kill them. Policymaker Derenda has rebuffed any such attempts to help his Narcotics Division recover marijuana plants and such without the routine destruction of man's best friend in these residential neighborhoods.

- The policymaker, namely Defendant Derenda, would know 'to a moral certainty' that his employees will confront a given situation, namely encountering canines during the course of Police business and/or warrant execution. The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, as is shown

above. Further, it is clear that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights. Cerbelli v. City of New York, 2008 U.S. Dist. LEXIS 109341, 99 CV 6846, (E.D.N.Y, 2008).

- Such inaction is the textbook definition of deliberate indifference. Plaintiffs have pled as much, and can recover on such a theory under Monell. As stated, local humane agencies such as the ECSPCA have reached out repeatedly and offered assistance to the City of Buffalo Police Department, who have shunned any outreach efforts to curb the bloodshed of canines.

60.     The above-referenced misuse of authority and power by said Defendants named in this cause of action was egregious and shocking to the conscience. As a result, the Plaintiffs were caused and will continue to undergo and endure severe mental anguish, hardship, and distress as a result thereof.

61.     The above-referenced municipal custom was the driving force behind the deprivation of Plaintiff Urban's property rights in the form of his beloved companion animal, aka Gotham.

62.     Such deprivations of Plaintiffs' property rights and right to liberty and happiness were in violation of the rights secured to Plaintiffs by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

63. As a result of the above-referenced Defendant's deprivation of Plaintiff's civil and Constitutional rights, Plaintiff's have been damaged in an amount to be determined at trial.

64. Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

### Third Cause of Action for Plaintiffs Michael Urban for violations of the Fourth Amendment as per 42 U.S.C § 1983 for the use of excessive force against City of Buffalo Police Department Officer John Doe.

65. Plaintiffs, Michael Urban repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

66. Defendant Officer John Doe kicked Plaintiff in the head on two occasions, while he was bound and tied, as Plaintiff tried to watch his beloved companion animal take his last breath from an adjacent room from where the dog was shot.

67. Said force caused Plaintiff pain and swelling, and was objectively unreasonable on its' face.

68. The above-referenced misuse of authority and power by the Defendants was egregious and shocking to the conscience. As a direct result, Plaintiffs sustained severe mental anguish, humiliation, and severe emotional distress as a result thereof.

69. Such deprivations were in violation of the rights secured to Plaintiffs by the Fourth and Fourteenth Amendments of the United States Constitution and by 42 U.S.C § 1983.

70. As a result of the above-referenced defendant's deprivation of Plaintiffs' civil and Constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

71. Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Fourth Cause of Action for Plaintiffs Michael Urban and Jami Krafchak for the intentional/ reckless/ negligent infliction of emotional distress against City of Buffalo Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly, Littere, and John Doe.**

72.     Plaintiffs Michael Urban and Jami Krafchak repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

73.     Defendant Militello's unjustifiable and brutal slaying of Gotham, as specified in the above allegations, constituted extreme and outrageous conduct under the circumstances. Gotham was wagging his tail, not barking, growling or charging, and of no threat to anyone. The heinous and deplorable nature of the killing heightened the emotional distress that the Plaintiffs have suffered as a result of the defendant's actions.

74.     The killing intended to cause, or more likely represents a complete disregard of the substantial probability of causing severe emotional distress to the Plaintiffs.

75.     The killing of Gotham in such a violent and gratuitous manner in the presence of Plaintiff Urban and subsequent cover up has in fact caused Plaintiff Urban severe emotional distress from which he still suffers.

76.     Further, Plaintiff Krafchak has been equally traumatized as a result of the Defendant's outrageous conduct, including the unnecessary, unprofessional, and disturbing act of Defendants encircling her and taking photographs of her clothed merely in bra and nightwear as she was putting on makeup for the day. Plaintiff, a private and law abiding person, has feared that such photographs of her being scantily

22

clad, are being circulated within the ranks of the Buffalo Police Department. She cannot rid herself of those tormented thoughts of the morning in question, from the photographs taken of her to the blood of an innocent and beloved animal dripping from the upper unit into her apartment. Both Plaintiffs feel they have not fully awoken from the nightmare of the horror movie they were unfairly and unjustifiably cast in by the Defendants on July 29, 2016.

77.     Plaintiff Krafchak was in the zone of danger and almost died as a bullet went through the upper unit, narrowly missing her as she got ready for work.

78.     Such above-referenced conduct was obscene, unjust, extreme, and outrageous. Further, Plaintiffs have suffered severe mental stress and anguish as a result thereof such conduct committed by the Defendants.

**Fifth Cause of Action for Plaintiffs Michael Urban and Jami Krafchak for the tort of property damage against the City of Buffalo, Daniel Derenda, Commissioner of the City of Buffalo Police Department, and City of Buffalo Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly and Littere.**

79.     Plaintiffs, Michael Urban and Jami Krafchak repeat and reiterate each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

80.     On the above-referenced date and time, during the execution of a search warrant, Defendant Detective Charles Militello intentionally and unjustifiably damaged Plaintiffs' property, by shooting and killing "Gotham," a purebred formerly vibrant and healthy 1.5-year-old pit bull type dog.

81.     Also, on the above-referenced date and time, during the execution of the same search warrant, the above-referenced Defendants intentionally and unjustifiably damaged Plaintiff Krafchak's ceiling and nearly caused Plaintiff Krafchak's demise in the process.

**Sixth Cause of Action for Plaintiffs Michael Urban and Jami Krafchak for violations of the Fourteenth Amendment as per 42 U.S.C § 1983 for negligence against the City of Buffalo**

82.     Plaintiffs, Michael Urban and Jami Krafchak repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

83.     The Defendants were negligent in various aspects leading to the above-referenced damages. Particularly, and among other things, The Defendants were negligent in:

- Failing and omitting to ensure its police officers used appropriate care, discretion, and regard towards animals and humans;

- Failing and omitting to properly and adequately instruct, supervise and train its police officers;

- Failing to provide proper protocol to deal with animals in routine situations using nonlethal force, and in sanctioning the unnecessary slaying of dogs which is equivalent towards promoting animal cruelty;

- Failing to implement any kind of meaningful program preparing officers to interact with dogs on private residences or premises, and in negligently hiring and entrusting Detective Charles Militello to carry out the sworn duties of a City of Buffalo Police Officer.

- Failing to take the precautionary measures necessary and to perform due diligence in ensuring that the warrant was being executed at the intended residence where drugs were being used or sold.

- Executing search warrants in a reckless and routine manner proven to be ineffective in seizing any substantial quantity of drugs or ridding the streets of drugs. Instead, the policing is designed to line the coffers of the Defendants while terrorizing the communities from which they are sworn to protect and serve, and where Plaintiffs and their companion animal become casualties of a roughshod and reckless form of policing as practiced by the Defendants.

**Seventh Cause of Action for Plaintiffs Michael Urban and Jami Krafchak for Battery against the City of Buffalo Defendants Militello, Beaty, McGrath, Lapiani, Adams, Mulhern, Nowadly, Littere, and John Doe**

84. Plaintiffs, Michael Urban and Jami Krafchak, repeats and reiterate each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

85. Upon entering Plaintiff Urban's home, 76 Weaver St., Upper Apartment, Buffalo, New York, 14206, and after the unlawful and improper execution of a search warrant, Defendant Officer John Doe did intentionally kick Plaintiff Urban in the head on two occasions. Plaintiff Krafchak was also subjected to unwanted and harmful contact by the Defendant Officers, which she did not consent to.

86. This harmful and offense contact was harmful and offensive to Plaintiff Urban and Plaintiff Krafchak, and committed without their consent.

### Punitive Damages against Defendant Buff Det. Charles Militello in his Official and Individual Capacity

87. Plaintiffs incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

88. Defendant Det. Charles Militello, in his Official and Individual Capacity, was deliberately indifferent to Plaintiffs' Constitutional rights as a result of his indifference and malice by shooting Gotham in such an unjustifiable, sociopathic and cruel manner on private premises.

89. Punitive damages are justified against the above-stated Defendant for his deliberate indifference and malice towards the Plaintiff herein.

WHEREFORE, the Plaintiffs demand judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

A. Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;

B. Exemplary damages in favor of the Plaintiff;

C. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and

D. Such other relief as the court may deem appropriate.

DATED:        Buffalo,  New York
              October 26, 2017

                              The Law Offices of Matthew Albert


                              By: ____/s/ Matthew  Albert_____
                              Matthew  Albert, ESQ.
                              Attorney  for Plaintiff
                              Office  and P.O. Address
                              254 Richmond  Ave.
                              Buffalo,  New York 14222
                              (716) 445-4119
                              mattalbertlaw@gmail.com